UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:16-cv-01842-CAS(AJWx) | Date | April 25, 2016 |
|---|---|---|---|
| Title | TAMMY JACOVIDES V. FUTURE FOAM, INC. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Douglas Silverstein | Emily Camastra |
| | Janet Swerdlow |

**Proceedings:**     DEFENDANTS' MOTIONS TO COMPEL ARBITRATION AND
STAY THE CASE (dkt. No. 11, filed March 24, 2016)

## I.     INTRODUCTION

On January 15, 2016, plaintiff Tammy Jacovides filed the instant action in the Los Angeles County Superior Court against defendants Future Foam, Inc., Foam Craft, Inc., North American Foam & Packaging, and Does 1 through 35, inclusive.[1] Dkt. 1, Ex. A ("Compl."). Jacovides' complaint asserts claims for (1) Violation of Labor Code §§ 98.6 and 1102.5, et seq.; (2) Retaliation in Violation of the Fair Employment and Housing Act ("FEHA"); (3) Failure to Maintain an Environment Free from Discrimination and Retaliation; (4) Wrongful Termination in Violation of Public Policy; (5) Violation of Labor Code, § 2699, et seq.; and (6) Declaratory Relief. See id. at 1. On March 17, 2016, Future Foam removed Jacovides' action to federal court on the basis of diversity jurisdiction. Dkt. 1("Notice of Removal").

On March 24, 2016, Future Foam filed a motion to compel arbitration and to stay the case. Dkt. 11. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

---

[1]Defendants argue, and Jacovides does not contest, that neither "Foam Craft, Inc." nor "North American Foam & Packaging" exist, but are rather merely "d/b/a" names of Future Foam. See Motion at 1 n.1; Richards Decl., Dkt. 2, ¶¶ 7 & 8. Because defendants have not moved to dismiss these parties, the Court declines to do so at this time. However, for the sake of convenience, the Court will refer to all defendants by the name "Future Foam."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES - GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-01842-CAS(AJWx) | Date | April 25, 2016 |
| Title | TAMMY JACOVIDES V. FUTURE FOAM, INC. | | |

## II.  BACKGROUND

On Jacovides' first day of employment at Future Foam, Future Foam gave her paperwork to sign, including a three-page Arbitration Agreement.  See Jacovides Decl., Dkt. 14-2, ¶ 3.  Future Foam did not provide Jacovides any opportunity to negotiate the terms of the Agreement, did not explain the document to her, and did not provide her with the JAMS rules that were to be incorporated into the Agreement.  Id., ¶¶ 3-7.  Nonetheless, Jacovides signed the Agreement.  Future Foam did not provide Jacovides with her own copy of the Arbitration Agreement at that time.  Id., at ¶ 6.

The Agreement provides that Future Foam

"[P]romotes a system of alternative dispute resolution that involves mediation and final binding arbitration to resolve all disputes that may arise out of the employment context. . . . [B]oth Employer and Employee agree that any claim, dispute, and/or controversy . . . between Employee and Employer . . .  arising from, related to, or having any relationship or connection whatsoever with Employee's seeking employment with, employment by, other association with, or termination of employment with Employer, whether based on tort, contract, statute, equity, or otherwise . . . shall be submitted to nonbinding mediation pursuant to the JAMS mediation rules . . . .  If the matter is not resolved through mediation, it must be submitted to and determined exclusively by final and binding arbitration under the Federal Arbitration Act, conducted in conformity with the [November 22, 2010] JAMS Employment Arbitration Rules and Procedures, before a single Arbitrator." Arbitration Agreement, Swerdlow Decl., Dkt. 11-3, Exh. A, at 1.

The Agreement also requires that the "[e]mployer will pay the reasonable and necessary fees and expenses of the Mediator."  Id. at 2.  Each party is only permitted to "take the deposition of one individual and any expert witness designated by another party without the Arbitrator's prior approval."  Id.  The arbitration is further to be conducted "in private, and will not be open, directly or indirectly, to the public or media."  Id.

On October 14, 2014, Jacovides notified Future Foam that she intended to bring whistleblower retaliation and wrongful termination claims against Future Foam.  Munro Decl., Dkt. 14-1, ¶ 4.  At that time, Jacovides requested her personnel file.  Id.  Future

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | | 'O' |
|---|---|---|---|---|
| Case No. | 2:16-cv-01842-CAS(AJWx) | | Date | April 25, 2016 |
| Title | TAMMY JACOVIDES V. FUTURE FOAM, INC. | | | |

Foam provided her with the file, which included the Arbitration Agreement.  See Arbitration Agreement, at 3; Munro Decl., ¶ 3.  The Agreement was signed by Future Foam's President and CEO, but the date next to his signature was missing.  Id.  Two other form documents that Jacovides was required to sign on her first day of employment were never signed by Future Foam.  See Munro Decl., ¶¶ 3, 7, Exh. B.  The parties have attended two mediations, exchanged documents, and conducted four depositions.  Munro Decl., ¶ 7.

## III.    LEGAL STANDARD

The Federal Arbitration Act provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  "The Act 'is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary.'"  Arreguin v. Global Equity Lending, Inc., No. C 07-06026 MHP, 2008 WL 4104340, *4 (N.D. Cal. Sept. 2, 2008) (quoting Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24 (1983)).  Nonetheless, "parties that agree to arbitrate statutory claims still are entitled to basic procedural and remedial protections so that they can effectively realize their statutory rights."  Id. at *6 (quoting Ting v. AT & T, 319 F.3d 1126, 1151 (9th Cir.2003)).

Thus, to be enforceable, an agreement to arbitrate statutory rights claims must meet the minimum requirements first articulated in Cole v. Burns Intern. Sec. Services, 105 F.3d 1465 (D.C. Cir. 1997).  Specifically, it must "(1) provide[ ] for neutral arbitrators, (2) provide[ ] for more than minimal discovery, (3) require[ ] a written award, (4) provide[ ] for all of the types of relief that would otherwise be available in court, and (5) [ ] not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum."  See Cole, 105 F.3d at 1482 (applying Gilmer, 500 U.S. at 28 (1991)); see also Arreguin, 2008 WL 4104340 at *4 (listing the five Cole factors, and noting that "[b]oth the Ninth Circuit and the California Supreme Court have cited . . . this portion of Cole with approval," citing Ting, 319 F.3d at 1151 and Armendariz v. Foundation Health Psychcare Services, Inc., 24 Cal.4th 83, 102 (2000)).

In addition, "generally applicable defenses, such as . . . unconscionability, may be applied to invalidate arbitration agreements" between employers and employees.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:16-cv-01842-CAS(AJWx) | Date | April 25, 2016 |
|---|---|---|---|
| Title | TAMMY JACOVIDES V. FUTURE FOAM, INC. | | |

Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996); see also Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1170 (9th Cir. 2003) ("Arbitration agreements . . . are subject to all defenses to enforcement that apply to contracts generally"); Ferguson v. Countrywide Credit Indus., Inc., 298 F.3d 778, 782 (9th Cir. 2002) ("In determining the validity of an agreement to arbitrate, federal courts 'should apply ordinary state-law principles that govern the formation of contracts,'" citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). Because Jacovides was employed in California, the Court applies California law to determine whether the Arbitration Agreement is unconscionable. See Ingle, 328 F.3d at 1170 ("Ingle was employed in California; we therefore evaluate Circuit City's arbitration agreement under the contract law of that state").

Jacovides argues that the Arbitration Agreement should not be enforced due to (1) lack of mutual assent, (2) waiver, and (3) unconscionability.

## IV. ANALYSIS

### A. Whether Future Foam Consented to the Agreement

The "first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate the dispute." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985). "[E]ven if one of the parties contends that the FAA applies to their agreement to arbitrate, the FAA does not apply until the existence of an enforceable arbitration agreement is established under state law principles involving formation, revocation and enforcement of contracts generally." Banner Entm't, Inc. v. Superior Court (Alchemy Filmworks, Inc.), 62 Cal. App. 4th 348, 357, as modified (Mar. 30, 1998). Under California law, "[t]he petitioner bears the burden of proving the existence of a valid arbitration agreement." Ruiz v. Moss Bros. Auto Grp., 232 Cal. App. 4th 836, 842 (2014). Where "there was no valid contract to arbitrate, the petition must be denied." Banner, 62 Cal. App. 4th at 356.

The parties do not dispute that Jacovides signed and assented to the document. See Opposition, Dkt. 14 at 6. However, Jacovides argues that there is no admissible evidence that Future Foam signed and bound itself to the Arbitration Agreement until after she made legal claims against it. Jacovides draws this inference from the fact that (1) the date next to Future Foam's signature is blank, (2) Jacovides was never presented with a copy of the signed Agreement until after she made legal claims against Future Foam, and (3)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:16-cv-01842-CAS(AJWx) | Date | April 25, 2016 |
|---|---|---|---|
| Title | TAMMY JACOVIDES V. FUTURE FOAM, INC. | | |

the other two agreements that Future Foam had Jacovides sign on her first day have blank signature lines for the Future Foam.

As an initial matter, Future Foam notes that its Chief Executive Officer/President, Bruce Schneider, <u>did</u> in fact sign the Agreement.  Richards Decl., Dkt. 15-1, ¶ 10.  Future Foam further argues that even if the Court accepts Jacovides' inference that Future Foam did not sign the Agreement until after she expressed her intent to bring legal claims against it, this is not fatal to the enforceability of the Agreement, because Future Foam's assent to be bound to the terms of the Agreement can be established through other means.

"A party's acceptance of an agreement to arbitrate may be express, as where a party signs the agreement. A signed agreement is not necessary, however, and a party's acceptance may be implied in fact." <u>Pinnacle Museum Tower Association v. Pinnacle Market Development</u>, 55 Cal. 4th 223, 236 (2012); <u>see</u> <u>Socoloff v. LRN Corp.</u>, No. 13-57064, 2016 WL 1179021, at *1 (9th Cir. Mar. 28, 2016)("Under California law, an employee's agreement to arbitrate employment-related claims need not be express, and may be implied in fact"); <u>Craig v. Brown & Root, Inc.</u>, 84 Cal. App. 4th 416, 420 (2000)("[A] party's acceptance of an agreement to arbitrate may be express or implied-in-fact where, as here, the employee's continued employment constitutes her acceptance of an agreement proposed by her employer" (internal citations omitted)); <u>see also</u> <u>Nghiem v. NEC Elec., Inc.</u>, 25 F.3d 1437, 1439 (9th Cir. 1994) ("While the FAA 'requires a writing,' it does not require that the writing be signed by the parties"); <u>Med. Dev. Corp. v. Indus. Molding Corp.</u>, 479 F.2d 345, 348 (10th Cir. 1973) (finding insignificant the fact that the arbitration agreement was unsigned by either party because there was other evidence of an agreement to arbitrate and stating "[a]ll that is required is that the arbitration provision be in writing").

Future Foam presented Jacovides with a copy of the Agreement at the start of her employment, which she signed.  Jacovides Depo., Swerdlow Decl., Exh. A, at 84:11-85:2.  Jacovides then proceeded to work for Future Foam for nearly four years. <u>See</u> Complaint, ¶ 16.  When Jacovides expressed her intent to initiate legal proceedings against Future Foam, Future Foam's counsel informed Jacovides of the Arbitration Agreement, initiated mediation proceedings pursuant to the Agreement, and filed a motion to stay the present litigation and compel arbitration. Regardless of whether or when Future Foam's representative signed the Agreement, Future Foam's actions alone imply that Future Foam intended to be bound to its terms.  <u>See</u> <u>Chico v. Hilton Worldwide, Inc.</u>, No. CV 14-5750-JFW SSX, 2014 WL 5088240, at *7 (C.D. Cal. Oct. 7,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | | 'O' |
|---|---|---|---|---|
| Case No. | 2:16-cv-01842-CAS(AJWx) | | Date | April 25, 2016 |
| Title | TAMMY JACOVIDES V. FUTURE FOAM, INC. | | | |

2014) (employer who did not sign the arbitration agreement nonetheless manifested assent to the agreement by presenting it to the plaintiff for execution, accepting the agreement, and then employing the plaintiff); id. ("Plaintiff also argues that the Crestline and RIM Arbitration Agreements are invalid or unenforceable because they were not executed by Crestline and RIM. This argument lacks merit and borders on the frivolous"); Serafin v. Balco Properties, Ltd., LLC, 235 Cal. App. 4th 165, 176-77 (2015) (holding that an arbitration agreement was enforceable despite the fact that the employer did not sign it because "not only was the agreement authored by Balco, and printed on Bay Alarm's letterhead, but Balco's later conduct evinces an intent to be bound by the arbitration agreement when it invoked the arbitration process to recover the $10,798.08 overpayment allegedly made to Serafin, and when it filed the motion to stay Serafin's employment litigation and to compel arbitration"); Ambler v. BT Americas Inc., 964 F. Supp. 2d 1169, 1174 (N.D. Cal. 2013) (holding that an arbitration agreement was valid, despite the fact that it had not been signed by the employer (INS) because "[t]he Agreement itself clearly indicates INS's intent to bind itself by defining the contracting party ('the Company') as INS, 'its subsidiaries, affiliates, successors or assigns' and by stating the requirement that Plaintiff sign it 'as a condition of' his employment. Having accepted Plaintiff's signed copy of the Agreement and thereafter accepting Plaintiff's work for many years, INS would in fact be equitably estopped from arguing it was not bound by the Agreement," citing Circuit City Stores, Inc. v. Najd, 294 F.3d 1104, 1109 (9th Cir.2002)). Future Foam has provided sufficient evidence that it assented to the Arbitration Agreement.[2]

### B. Whether Future Foam Waived the Arbitration Agreement

Jacovides next argues that Future Foam waived its arbitration rights by taking actions inconsistent with the belief that the Agreement was binding.

---

[2]At the hearing counsel for Jacovides argued that the Arbitration Agreement's inclusion of a signature line for the employer indicates that this was the only way that the parties intended for Future Foam to accept the Agreement. He argued that the Court should therefore not look to other ways in which Future Foam's assent may have been implied. Jacovides' argument fails on a fundamental level: Future Foam did not need to accept the Arbitration Agreement, as Future Foam offered the Agreement in the first place, and Future Foam's assent to its terms may be implied from this offer. None of the cases cited in Jacovides' brief or mentioned at hearing are contrary to this holding.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL                    'O'

| Case No. | 2:16-cv-01842-CAS(AJWx) | Date | April 25, 2016 |
|---|---|---|---|
| Title | TAMMY JACOVIDES V. FUTURE FOAM, INC. | | |

Waiver of a contractual right to arbitration is not favored.  See, e.g., Lake Communications, Inc. v. ICC Corp., 738 F.2d 1473, 1477 (9th Cir. 1984) ("Waiver of arbitration is not readily found. . . .  More is required than action inconsistent with an arbitration provision; prejudice to the party opposing arbitration must also be shown"), overruled on other grounds by Mitsubishi Motors Corp., 473 U.S. at 632-25.  See also Moses H. Cone Memorial Hospital, 460 U.S. at 24-25 ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability").  Thus "any party arguing waiver of arbitration bears a heavy burden of proof."  Van Ness Townhouses v. Mar Industries Corp., 862 F.2d 754, 758 (9th Cir. 1988) (quoting Fisher v. A.G. Becker Paribas Inc., 791 F.2d 691, 694 (9th Cir. 1986)).

"In the Ninth Circuit, arbitration rights are subject to constructive waiver if three conditions are met: (1) the waiving party must have knowledge of an existing right to compel arbitration; (2) there must be acts by that party inconsistent with such an existing right; and (3) there must be prejudice resulting from the waiving party's inconsistent acts."  United Computer Systems, Inc. v. AT&T Corp., 298 F.3d 756, 766 (9th Cir. 2002).

If any of these prongs is not satisfied, the party asserting waiver has not met her burden.  See id. (holding that waiver had not been demonstrated where the party seeking to avoid arbitration could not show prejudice); Shinto Shipping Co., Ltd. v. Fibrex & Shipping Co., 672 F.2d 1328, 1330 (9th Cir. 1978) (the court "must be convinced not only that the appellee acted inconsistently with that arbitration right, but that the appellant was prejudiced by this action before [it] can find a waiver"); Lake Communications, 738 F.2d at 1477 ("More is required than action inconsistent with an arbitration provision; prejudice to the party opposing arbitration must also be shown").

Jacovides argues that Future Foam's actions were inconsistent with the belief that the Agreement was binding when it (1) engaged in two non-JAMS mediations, (2) had Jacovides split the costs of such mediations instead of paying for the mediations itself, (3) engaged in the exchange of documents and four depositions without an arbitrator's order, and (4) removed the case to federal court.  See Munro Decl., ¶¶ 3-7.  Future Foam disputes this characterization of the parties' actions prior to the filing of the present suit.  However, the Court need not reach the question of whether Future Foam acted

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL                        'O'

| Case No. | 2:16-cv-01842-CAS(AJWx) | Date | April 25, 2016 |
|---|---|---|---|
| Title | TAMMY JACOVIDES V. FUTURE FOAM, INC. | | |

inconsistently with the belief that the Agreement was binding because Jacovides has failed to show that Future Foam's alleged acts resulted in prejudice.

Jacovides argues that she will be prejudiced if this Court does not find that Future Foam waived its right to arbitrate, because she has committed significant resources to conducting and defending four depositions, and has spent over $8,000 on the costs of two mediations.  See id., ¶ 7.  It is unclear how Jacovides will be prejudiced if her claims are returned to an arbitral forum.  First, Jacovides agreed to both limited discovery and a second mediation session.  Id., ¶ 8.  Second, and more importantly, there is no reason why she would not be able to use the discovery that has already taken place if her case goes to arbitration.

Jacovides cites two cases in support of her argument that the fact that the parties took limited discovery will be prejudicial to her.  However, both cases concern a completely different factual situation - one in which the moving party had litigated the matter and conducted significant formal discovery prior to moving to compel arbitration.  See Van Ness Townhouses, 862 F.2d at 758; Guess?, Inc. v. Sup. Ct. (Kirkland), 79 Cal. App. 4th 533, 558 (2000).  The present case is readily distinguishable, as the discovery in this matter was taken pursuant to the parties' agreed course of mediation, prior to the filing of the complaint.  Future Foam did not string Jacovides along through the litigation process; they promptly moved to compel arbitration within a few months of Jacovides filing the complaint.

Moreover, "courts are reluctant to find prejudice to the plaintiff who has chosen to litigate, simply because the defendant litigated briefly (e.g., by filing a motion to dismiss or requesting limited discovery) before moving to compel arbitration."  Brown v. Dillard's, Inc., 430 F.3d 1004, 1012 (9th Cir. 2005).  For example, in United Computer Systems, Inc., 298 F.3d 756, the Ninth Circuit found insufficient to establish prejudice a claim that the parties opposing arbitration had incurred substantial costs litigating the matter in state and federal court, including expenses incurred litigating a motion to dismiss in district court.  The Ninth Circuit noted that "[a]ssuming that [the proponent of arbitration] withdrew its request for arbitration and, in response, the [the opponents or arbitration] permitted the case to proceed to discovery and to a trial, an argument of prejudice based on litigation costs would be much more compelling."  Id. at 765.  Similarly, in Lake Communications, 738 F.2d at 1477, the court held that there had been no waiver despite the fact that defendant filed a motion to dismiss and did not seek arbitration for more than a year.  The limited discovery conducted by the parties in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES - GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-01842-CAS(AJWx) | Date | April 25, 2016 |
| Title | TAMMY JACOVIDES V. FUTURE FOAM, INC. | | |

present case pales by comparison and does not justify a finding of prejudice.  Future Foam did not waive its arbitration rights.

### C.    Whether the Agreement is Enforceable

Jacovides argues that the Arbitration Agreement is unconscionable and thus unenforceable.

### 1.    Legal Standard Governing the Unconscionability of Arbitration Contracts

The final phrase of § 2 of the FAA permits arbitration agreements to be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  This clause "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue."  AT&T Mobility, LLC v. Concepcion, 563 U.S. 333, 333 (2011); Doctor's Associates, 517 U.S. at 682 ("[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2").

California recognizes the unconscionability defense to contract enforcement.  See Cal.Civ.Code § 1670.5 ("If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result").  Under California law, "a contractual provision is unenforceable if it is both procedurally and substantively unconscionable."  Kilgore v. KeyBank, Nat. Assn., 718 F.3d 1052, 1058 (9th Cir. 2013); DIRECTV, 2013 WL at * 7.  However, the two types of unconscionability need not be present in the same degree.  Armendariz, 24 Cal.4th at 114.  Rather, courts will invoke a "sliding scale . . . which disregards the regularity of the procedural process of the contract formation, that creates the term, in proportion to the greater harshness or unreasonableness of the substantive terms themselves."  Id. (internal citations omitted).  "In other words, the more substantially oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."  Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:16-cv-01842-CAS(AJWx) | Date | April 25, 2016 |
|---|---|---|---|
| Title | TAMMY JACOVIDES V. FUTURE FOAM, INC. | | |

### 2.    Procedural Unconscionability

#### A)    Surprise

Jacovides first argues that Future Foam failed to attach the JAMS arbitration rules to the Arbitration Agreement and that such failure can support a finding of surprise and, consequently, procedural unconscionability.

Under California law, parties to an agreement can incorporate the terms of another document into the agreement by reference.  Troyk v. Farmers Group, Inc., 171 Cal.App.4th 1305, 1331, 90 Cal.Rptr.3d 589 (2009); Wolschlager v. Fid. Nat. Title Ins. Co., 111 Cal.App.4th 784, 790, 4 Cal.Rptr.3d 179 (2003).  "For the terms of another document to be incorporated into the document executed by the parties, the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties."  Collins v. Diamond Pet Food Processors of Cal., LLC, No. 2:13-cv-00113-MCE-KJN, 2013 WL 1791926, *5 (E.D. Cal. Apr. 26, 2013) (quoting Shaw v. Regents of Univ. of Cal., 58 Cal.App.4th 44, 54, 67 Cal.Rptr.2d 850) (1997)) (internal quotation marks omitted).

Jacovides argues that in order to incorporate arbitration rules into an employment arbitration agreement, the rules themselves must be attached to the agreement. In support of her argument, Jacovidess cites to various California cases that have declined to enforce arbitration agreements in light of their failure attach arbitration rules that were incorporated by reference.

"However, the establishment of a general rule that arbitration rules must be attached to an employment agreement in order to avoid a finding of procedural unconscionability would place arbitration contracts on a different footing than other contracts when it comes to the doctrine of incorporation by reference. This differential treatment of arbitration contracts is explicitly prohibited by the Supreme Court's decision in Concepcion.  As such, regardless of these California cases, the Court concludes that the failure to attach the arbitration rules to the Agreements does not render them procedurally unconscionable."  Fardig v. Hobby Lobby Stores Inc., No. SACV 14-561 JVS ANX, 2014 WL 2810025, at *5 (C.D. Cal. June 13, 2014), reconsideration denied, No. SACV 14-00561 JVS, 2014 WL 4782618 (C.D. Cal. Aug. 11, 2014) (internal citations omitted).  See also McFarland v. Almond Bd. of California, No.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:16-cv-01842-CAS(AJWx) | Date | April 25, 2016 |
|---|---|---|---|
| Title | TAMMY JACOVIDES V. FUTURE FOAM, INC. | | |

2:12-CV-02778-JAM, 2013 WL 1786418, at *5 (E.D. Cal. Apr. 25, 2013)(holding that a "bright-line rule," such as that proposed by Jacovides, "is preempted by the FAA under Concepcion because it represents a stricter rule than would be applied to other types of contracts.  Following Concepcion, courts must conduct a case-by-case analysis, consistent with generally applicable California contract law, to determine if incorporating arbitration rules by reference meets the requirements of California contract law based on the facts of each case").[3]

No other elements of potential surprise are present.  As Future Foam notes, the Agreement was clearly labeled as a "Mutual Agreement to Mediate/Arbitrate" and states unequivocally that any claims, disputes, or controversies arising out of Jacovides' employment with Future Foam "shall be submitted to and determined exclusively by final and binding arbitraiton under the Federal Arbitraiton Act."  The Agreement incorporates the JAMS Employment Arbitration Rules and Procedures by reference, see Arbitration Agreement at 1, and the JAMS rules are easily accessible on the Internet, see Swerdlow Decl., ¶ 9; Munro Decl., ¶ 2.  This is sufficient to satisfy California's general contract requirements for incorporating the terms of another document into an agreement by

---

[3]Jacovides additionally cites Grabowski v. Robinson, 817 F. Supp. 2d 1159, 1172 (S.D. Cal. 2011), which held even in the context of the FAA that "the failure of Defendants to supply Jacovides with [the arbitration procedures] at the time he signed the agreements adds an element of surprise, and therefore procedural unconscionability." However, even if this case presents a potential split in authority, the Grabowski court ultimately determined that the procedural unconscionability stemming from the failure to attach the referenced arbitration rules was not strong and found the agreement enforceable.  Id. at 1173, 1179.  This has led other courts in this district to conclude that "the failure to attach the rules is not alone enough to sustain a finding of procedural unconscionability," but that it may slightly support such a finding, depending on the other factual circumstances of the agreement.  See Melez v. Kaiser Found. Hosps., Inc., No. 2:14-CV-08772-CAS, 2015 WL 898455, at *6 (C.D. Cal. Mar. 2, 2015).  The Court agrees that a bright-line rule requiring employers to attach the arbitration rules is inconsistent with the holding in Concepcion.  However, to the extent that the fact that Jacovides did not have access to the rules at the time she was required to sign the Arbitration Agreement speaks to the general requirement that the terms be "easily available," the effect of any resulting surprise is slight at best.  In the absence of other elements of procedural unconscionability, it does not change the outcome of the case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES - GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-01842-CAS(AJWx) | Date | April 25, 2016 |
| Title | TAMMY JACOVIDES V. FUTURE FOAM, INC. | | |

reference, and is therefore sufficient in the present context as well. See Ortiz v. Hobby Lobby Stores, Inc., 52 F. Supp. 3d 1070, 1080 (E.D. Cal. 2014)("The Arbitration Agreement provides, 'arbitration shall be conducted pursuant to the American Arbitration Association's National Rules for Resolution of Employment Disputes or the Institute for Christian Conciliation's Rules of Procedure for Christian Conciliation . . . .' As correctly noted by Future Foam, the rules of both arbitral forums are easily accessible on the organizations' websites. Based on the Arbitration Agreement's clear and unambiguous incorporation of the arbitration rules and the accessibility of those rules, the Court concludes that the failure to attach the rules does not render the Arbitration Agreement procedurally unconscionable" (internal citations omitted)); Ulbrich v. Overstock.Com, Inc., 887 F. Supp. 2d 924, 932-33 (N.D Cal. 2012) (employer's failure to provide copy of AAA rules did not render agreement procedurally unconscionable because the incorporation, which stated that the arbitration would proceed under "the rules then in effect of the American Arbitration Association," was clear and the incorporated rules were readily available).

### B)    Adhesion

Jacovides next argues that there was oppression because Future Foam required Jacovides to sign the Agreement as a part of a pile of other documents on her first day of employment, without giving her an opportunity to negotiate any of the terms of the Agreement. See Jacovides Decl., ¶¶ 3-7.

With these arguments, Jacovides is merely describing a contract of adhesion. Shroyer v. New Cingular Wireless Servs., Inc., 498 F.3d 976, 983 (9th Cir. 2007) ("Under California law, a contract of adhesion is defined as a standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms"); Flores v. Transamerica HomeFirst, Inc., 93 Cal.App.4th 846, 853 (2001) (same). A "contract of adhesion" is defined as "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." Armendariz, 24 Cal.4th at 113.

California state courts are split as to whether a finding of adhesion is sufficient to constitute procedural unconscionability. Compare Flores, 93 Cal.App.4th at 853 ("A finding of a contract of adhesion is essentially a finding of procedural unconscionability") and Stirlen v. Supercuts, Inc., 51 Cal.App.4th 1519, 1533 (1997) ("In the present case, the threshold question is whether the subject arbitration clause is part of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:16-cv-01842-CAS(AJWx) | Date | April 25, 2016 |
|---|---|---|---|
| Title | TAMMY JACOVIDES V. FUTURE FOAM, INC. | | |

a contract of adhesion, thereby establishing the necessary element of procedural unconscionability"), with Morris v. Redwood Empire Bancorp, 128 Cal.App.4th 1305, 1318 (Cal. Ct. App. 2005) (criticizing the conflation of the adhesion determination with the procedural unconscionability determination, and arguing that such a conflation leads to "analytical myopia"); and California Grocers Assn. v. Bank of America, 22 Cal.App.4th 205, 214 (Cal. Ct. App. 1994) (stating that adhesiveness is not "per se oppressive").

Resolution of the above split in California authority does not change the ultimate outcome of this case. This is so because even if adhesion were sufficient to demonstrate procedural unconscionability, procedural unconscionability alone is insufficient to invalidate an arbitration clause, or any other contractual provision. Sanchez v. Valencia Holding Co., LLC, 353 P.3d 741, 751 (2015) (noting that "a finding of procedural unconscionability does not mean that a contract will not be enforced, but rather that courts will scrutinize the substantive terms of the contract to ensure they are not manifestly unfair or one-sided"); Nagrampa v. MailCoups, Inc., 469 F.3d 1257, 1284 (9th Cir. 2006) (determining that the arbitration agreement was procedurally unconscionable and then turning to "examine the extent of substantive unconscionability to determine, whether based on the California courts' sliding scale approach, the arbitration provision is unconscionable"). As stated above, procedural and substantive unconscionability "must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." Stirlen, 51 Cal.App.4th at 1533.

Moreover, were this Court to hold adhesion sufficient for procedural unconscionability, it would recognize that in this case the showing of procedural unconscionability is quite minimal, due to the lack of any significant evidence of unconscionability besides adhesion. See Nagrampa, F.3d at 1284 ("[W]e acknowledge that the evidence of procedural unconscionability appears minimal"); Morris, 128 Cal.App.4th at 1318 ("[O]ur task is not only to determine whether procedural unconscionability exists, but more importantly, to what degree it may exist").

For that reason, pursuant to California's "sliding scale" approach, were this Court to base a finding of procedural unconscionability solely on the adhesive nature of the arbitration clause, it would require a showing that the terms of the Agreement are "substantially oppressive." Armendariz, 24 Cal.4th at 114. As discussed below, the facts of this case do not support a finding that the terms of the contract are substantively unconscionable at all, let alone "substantially" so.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**        **'O'**

| Case No. | 2:16-cv-01842-CAS(AJWx) | Date | April 25, 2016 |
|----------|-------------------------|------|----------------|
| Title | TAMMY JACOVIDES V. FUTURE FOAM, INC. | | |

### 2.        Substantive Unconscionability

Jacovides contends that the Arbitration Agreement contains many substantively unconscionable terms, and that these unconscionable terms so permeate the Agreement that they are non-severable and render the entire Agreement unenforceable.  Future Foam denies that any term is unconscionable, and contends that any terms the Court does deem unconscionable should simply be severed.  The Court addresses the disputed provisions below.

### a.        Mutuality

Jacovides first argues that the Agreement is substantively unconscionable because of a lack of mutuality.  "The paramount consideration in assessing substantive unconscionability is mutuality."  Lima v. Gateway, Inc., 886 F. Supp. 2d 1170, 1182-83 (C.D. Cal. 2012); see also Conception, 563 U.S. at 340 (acknowledging that under California law, an agreement can be found substantively unconscionable where the terms are "one sided"); Armendariz, 24 Cal. 4th at 118 ("[A] lack of mutuality renders a contract substantively unconscionable").

Jacovides argues that the Agreement was not bilateral because Future Foam did not bind itself to the Agreement until after she brought legal claims against Future Foam.  However, as discussed above, Future Foam's assent to be bound by the Agreement was implied in fact prior to Jacovides' initiation of legal proceedings.  Further, the terms of the Agreement are mutual, as the Agreement requires both Future Foam and its employees to arbitrate all claims arising between them and to give up their rights to a trial by jury.  See Arbitration Agreement.  The Agreement is not substantively unconscionable for lack of mutuality.

### b.        Inadequate Discovery Provisions

Jacovides next argues that the Agreement does not provide for adequate discovery because it (1) permits only one non-expert deposition without permission from the arbitrator; and (2) adopts the JAMS rules regarding the exchange of documents, which require that the parties provide each other with all non-privileged documents and other information relevant to the dispute or claim immediately after commencement of the arbitration.  See Swerdlow Decl., ¶ 9 and Exh. F, Rule 17.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:16-cv-01842-CAS(AJWx) | Date | April 25, 2016 |
|---|---|---|---|
| Title | TAMMY JACOVIDES V. FUTURE FOAM, INC. | | |

     In <u>Armendariz v. Found. Health Psychare Servs., Inc.</u>, the California Supreme Court explained that while arbitration can restrict discovery, employees "are at least entitled to discovery sufficient to adequately arbitrate their statutory claim[s], including access to essential documents and witnesses, as determined by the arbitrator(s) and subject to limited judicial review."  24 Cal. 4th at 89.  The court "recognize[d] . . . that a limitation on discovery is one important component of the 'simplicity, informality, and expedition of arbitration.'"  <u>Id.</u> at 106 n.11 (citation omitted)).  Even so, the <u>Armendariz</u> court explained that this "desirable simplicity" must be balanced with a plaintiff's need for discovery to prove her statutory claims.  <u>Id.</u>  The California Supreme Court later characterized this part of <u>Armendariz</u> as designed "to ensure minimum standards of fairness in arbitration so that employees subject to mandatory arbitration agreements can vindicate their public rights in an arbitral forum."  <u>Little v. Auto Stiegler, Inc.</u>, 29 Cal. 4th 1064, 1080 (2003).[4]

     In <u>Fitz v. NCR Corp.</u>, for example, the California Court of Appeal applied <u>Armendariz</u> in finding an arbitration agreement's discovery limitations substantively unconscionable.  118 Cal. App. 4th 702, 715-19 (2004).  The court described these limitations as follows:

     The ACT policy limits discovery to the sworn deposition statements of two
     individuals and any expert witnesses expected to testify at the arbitration
     hearing.  The policy also requires all exhibits and a list of potential witnesses
     to be exchanged at least two weeks in advance of the arbitration hearing.  No

---

[4]Future Foam questions the applicability of <u>Armedariz</u> and a number of pre-<u>Concepcion</u> cases as impermissibly singling out arbitration agreements.  <u>Concepcion</u> held that FAA § 2 preempts "categorical rulings that interfere with fundamental aspects of arbitration."  <u>Tiri v. Lucky Chances, Inc.</u>, 226 Cal. App. 4th 231, 248 (2014)(citing <u>Concepcion</u>, 563 U.S. at 343).  This includes instances where "a doctrine normally thought to be generally applicable, such as duress or, as relevant here, unconscionability, is alleged to have been applied in a fashion that disfavors arbitration."  <u>Concepcion</u>, 563 U.S. at 341.  The cases cited here do not present categorical rulings interfering with arbitration, but rather serve as a framework for analyzing in context whether the arbitration provisions are so one-sided as to be substantively unconscionable.  The analysis presented here is therefore that of the "generally applicable" contract defense of unconscionability and is not preempted by <u>Concepcion</u> or § 2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:16-cv-01842-CAS(AJWx) | Date | April 25, 2016 |
|---|---|---|---|
| Title | TAMMY JACOVIDES V. FUTURE FOAM, INC. | | |

other discovery is allowed unless the arbitrator finds a compelling need to allow it. The policy requires the arbitrator to limit discovery as specified in the agreement unless the parties can demonstrate that a fair hearing would be impossible without additional discovery. Id. at 716.

The Fitz court reasoned that these limits unduly burdened the employee in prosecuting a complex case because she needed the arbitrator's approval to depose most of her witnesses. Id. at 717. The arbitrator's authority to allow more discovery did not constitute an adequate "safety valve" because of the "impossibility" standard constraining his or her discretion. Id. The court also rejected an argument that the limits on discovery were mutual because they applied to both parties, reasoning that employers generally have access to many of the relevant documents and witnesses. Id. at 716 (citing Mercuro v. Superior Court, 96 Cal. App. 4th 167, 183 (2002)).

Other post-Armendariz courts have offered similar reasons for holding extreme limits on discovery to be unconscionable, especially where the limits were one-sided or imposed too stringent a standard for obtaining additional discovery where needed. See, e.g., Ferguson, 298 F.3d at 786 (agreement restricted discovery to three depositions (not counting the deposition of experts) and 30 requests of any kind, and further stated that the deposition of a corporate representative could cover no more than four designated subjects without imposing such a limitation on the deposition of an employee); Openshaw v. FedEx Ground Package Sys., Inc., 731 F. Supp. 2d 987, 995 (C.D. Cal. 2010) (agreement completely foreclosed discovery except on damages); Ontiveros v. DHL Exp. (USA), Inc., 164 Cal. App. 4th 494, 511-14 (2008) (agreement restricted discovery to one deposition and requests for production of documents, subject to the arbitrator's allowance of more discovery "upon a showing of substantial need").[5]

---

[5]The other two cases Jacovides cites not only involve more severe discovery limits than those included in the present Agreement, but were also decided on other grounds, with the discovery limitations only serving to corroborate the one-sidedness of already decidedly unconscionable agreements. See Martinez v. Master Protection Corp., 118 Cal. App. 4th 107, 118-19 (2004) (deciding that the agreement was unconscionable on other grounds but noting that the restricted discovery provision, which only enabled the arbitrator to augment discovery upon a showing of substantial or compelling need "compound[ed] the one-sidedness of the arbitration agreement"); Kinney v. United HealthCare Servs., Inc., 70 Cal. App. 4th 1322, 1330-32 (1999) (holding that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:16-cv-01842-CAS(AJWx) | Date | April 25, 2016 |
| Title | TAMMY JACOVIDES V. FUTURE FOAM, INC. | | |

However, courts have upheld less severe discovery limits.  See, e.g., Grabowski, 817 F. Supp. 2d at 1175 (upholding agreement that "does not limit the employee to only one deposition, and . . . names the Arbitrator as the decisionmaker on whether discovery should be granted"); Sanchez v. Carmax Auto Superstores Cal., LLC, 224 Cal. App. 4th 398, 478-79 (2014) (upholding agreement where discovery was restricted to relevant documents, personnel file, 20 interrogatories, and three depositions, with additional discovery on a showing of "substantial need," where plaintiff "does not make any showing that he could not maintain his claim without more discovery"); Mercuro, 96 Cal. App. at 182-83 (upholding discovery restricted to three depositions and 30 discovery requests, with additional discovery "upon a showing of good cause," but with a presumption against increasing the number of requests, where plaintiff had no evidence that the provisions as applied "would necessarily prevent [him] from vindicating his statutory rights").

Ultimately, although the Agreement initially limits the parties to one deposition, it allows the arbitrator to authorize further discovery without the limitation of a high standard such as "impossib[ility]" of a fair hearing without such discovery (Fitz, 118 Cal. App. 4th at 716) or "substantial need" (Ontiveros, 164 Cal. App. 4th at 511).  Jacovides does not present any evidence to establish that these or any alleged written discovery restrictions will prevent her from vindicating her statutory rights.  Because the Agreement's restrictions are more akin to those that have been upheld than to those that have been struck down, the Agreement's limitations on discovery are not substantively unconscionable.

### d.    Confidentiality Requirements

Finally, Jacovides argues that the Agreement impermissibly requires secrecy.  The confidentiality provisions of the Agreement state: "[A]ll communications during or in connection with the arbitration proceedings are privileged in accordance with California Civil Code § 47(b).  The mediation and/or arbitration will be conducted in private, and

---

arbitration agreement lacked mutuality because the employer was not required to submit its claims to arbitration, but that the one-sidedness of the agreement was "heightened" by the agreement's discovery limitation of one interrogatory for identification of witnesses, 25 document requests, and two eight-hour depositions without giving the arbitrator discretion to augment discovery).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:16-cv-01842-CAS(AJWx) | Date | April 25, 2016 |
| Title | TAMMY JACOVIDES V. FUTURE FOAM, INC. | | |

will not be open, directly or indirectly, to the public or the media."  Arbitration
Agreement at 2. Jacovides argues that these provisions are unconscionable because they
allow Future Foam to use leverage as "repeat players" in the arbitration process, while
preventing employees from learning from similar prior cases.

        The Ninth Circuit has found certain restrictive confidentiality provisions
unconscionable for these reasons.  See Pokorny v. Quixtar, 601 F.3d 987, 1002 (9th Cir.
2010) (finding a confidentiality provision that prohibited the parties from disclosing the
substance of their claim, the content of any testimony or other evidence presented at an
arbitration, or the terms of any arbitration award unconscionable because it handicapped
plaintiffs' ability to investigate while allowing the employer to learn how to better
arbitrate future claims); Davis v. O'Melveny & Myers, 485 F.3d 1066, 1078-79 (9th Cir.
2007) (finding a confidentiality clause unconscionable because it prevented employees
from contacting other employees to assist in arbitration), overruled on other grounds by
Ferguson v. Corinthian Colls., Inc., 733 F.3d 928, 933-34 (9th Cir. 2013); Ting, 319 F.3d
at 1151-52 (holding that the district court had not erred in finding a confidentiality
provision that prevented the parties from disclosing the existence, content, or results of
any arbitration or award unconscionable because AT&T had "placed itself in a far
superior legal posture by ensuring that none of its potential opponents have access to
precedent while, at the same time, AT&T accumulates a wealth of knowledge");
Grabowski, 817 F. Supp. 2d at 1176-77 (holding confidentiality clause unconscionable
because it would prevent the employee from contacting other employees for assistance).

        Nonetheless, as Future Foam argues, the scope of the present provision is
comparatively limited in size and scope, as it merely states that communications during
or in connection with the arbitration proceedings are privileged in accordance with
California Civil Code Section 47(b), and that the arbitration itself will be conducted in
private.  While the requirement that the arbitration not be open, even indirectly, to the
public or media is somewhat open-ended, the Agreement does not prevent, as in other
agreements deemed unconscionable, parties from disclosing the existence or substance of
the claim, arbitration, or award, nor does it prohibit employees from contacting other
employees to assist in the arbitration.

        Moreover, even assuming that the confidentiality provision is unduly restrictive,
the Ninth Circuit has cautioned against invalidating arbitration agreements on the basis of
confidentiality provisions, noting that "[p]laintiffs are free to argue during arbitration that
the confidentiality clause is not enforceable."  Kilgore, 718 F.3d at 1059 n.9; see also

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | **'O'** |
|---|---|---|---|
| Case No. | 2:16-cv-01842-CAS(AJWx) | Date | April 25, 2016 |
| Title | TAMMY JACOVIDES V. FUTURE FOAM, INC. | | |

Herrera v. CarMax Auto Superstores Cal., LLC, No. CV-14-776-MWF (VBKx), 2014
WL 3398363, *9-10 (C.D. Cal. July 2, 2014) (acknowledging that a possible
interpretation of a confidentiality provision "would be substantively unconscionable," but
finding that the "potentially unconscionable interpretation of the confidentiality provision
does not so permeate the arbitration agreement as to render it unenforceable," where no
other provisions were substantively unconscionable); Velazquez v. Sears, No.
13cv680-WQH-DHB, 2013 WL 4525581, *5-6 (S.D. Cal. Aug. 26, 2013).  Accordingly,
the Court finds the confidentiality provision at issue not to be substantively
unconscionable.  Jacovides' argument that the Agreement is unenforceable because of
unconscionability fails.

### D.    Whether Plaintiff's PAGA Claims are Subject to Arbitration

Jacovides next argues that even if her individual claims are subject to arbitration,
her PAGA claims should not be stayed, as representative PAGA claims are not subject to
private arbitration agreements.  She therefore requests that the Court deny Future Foam's
arbitration claim on the whole to avoid contradictory rulings or, in the alternative, to
exclude the PAGA claim from its order compelling arbitration.

In Sakkab v. Luxottica Retail North America, Inc., 803 F.3d 425, 428 (9th Cir.
2015), the Ninth Circuit considered "whether the FAA preempts the California rule
announced [by the California Supreme Court] in Iskanian v. CLS Transportation Los
Angeles, LLC, 59 Cal.4th 348 (2014), which bars the waiver of representative claims
under [PAGA]."  Ultimately, the Court upheld California's Iskanian rule, finding an
employee's right to bring PAGA actions to be unwaivable, explaining that the rule "does
not stand as an obstacle to the accomplishment of the FAA's objectives, and is not
preempted."  Id.  Thus, in accordance with the Ninth Circuit's decision in Sakkab, the
California rule barring waiver of one's right to bring PAGA claims remains good law.

In light of Iskanian and Sakkab, Future Foam concedes that waivers of
representative PAGA claims are unenforceable.  However, Future Foam argues that
Jacovides' claim for PAGA penalties was not brought on a representative basis, but as an
individual.  The basis of Future Foam's attempted distinction is unclear.  Any PAGA
action is inherently a representative action, because "an employee bringing a PAGA
action does so 'as the proxy or agent of the state's labor law enforcement agencies,' who
are the real parties in interest."  Sakkab, 803 F.3d at 435-36 (quoting Iskanian, 59 Cal.4th
at 380, 382).  To the extent that Future Foam argues that Jacovides fails to state a claim

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:16-cv-01842-CAS(AJWx) | Date | April 25, 2016 |
|---|---|---|---|
| Title | TAMMY JACOVIDES V. FUTURE FOAM, INC. | | |

by failing to allege violations against other employees, this argument is properly addressed in a rule 12(b)(6) motion to dismiss, not in the present motion to compel arbitration.

Jacovides' PAGA claims are not subject to the Arbitration Agreement; the Court does not compel arbitration with regards to these claims.[6]

## V.     CONCLUSION

In accordance with the foregoing, the Court **DENIES** defendants' motion to compel arbitration and stay proceedings with regards to Jacovides' PAGA claims, but **GRANTS** defendants' motion to compel arbitration and stay proceedings with regards to the remainder of her claims.

IT IS SO ORDERED.

|  | 00 | : | 18 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |

---

[6]At the hearing, Future Foam's counsel raised a new argument regarding whether the Court should compel arbitration of the PAGA claim.  To the extent that Future Foam wishes to bring these additional arguments, it is invited to do so in a fully briefed and noticed motion.